UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
9-19-12
SEP 19 2012

JOHN W DARRAH
U.S DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 11 CR 458 |
| vs. | ) | Judge John W. Darrah |
| | ) | |
| CHUNLAI YANG | ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant CHUNLAI YANG, and his attorney, EDWARD GENSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The superseding indictment in this case charges defendant with ten counts of theft of trade secrets, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4).

3.    Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Counts One and Two, which charges defendant with theft of trade secrets, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count One of the superseding indictment: on or about February 28, 2011, at Chicago, in the Northern District of Illinois, CHUNLAI YANG, defendant herein, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, download, upload, replicate, and transmit one or more trade secrets belonging to CME Group Inc. ("CME"), specifically, proprietary computer file EBFDCADFDF71C14543880F6E88DC535F, such trade secrets being related to or included in products produced for and placed in interstate and foreign commerce, intending and

2

knowing that the offense would injure CME, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4).

      b.    With respect to Count two of the superseding indictment: on or about April 7, 2011, at Chicago, in the Northern District of Illinois, CHUNLAI YANG, defendant herein, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, download, upload, replicate, and transmit one or more trade secrets belonging to CME, specifically, proprietary computer file FCCBB1225B9C0E4B77773ECE7DA1907A, such trade secrets being related to or included in products produced for and placed in interstate and foreign commerce, intending and knowing that the offense would injure CME, in violation of Title 18, United States Code, Section 1832(a)(2) and (a)(4).

      c.    More specifically, with regard to both counts,

From in or around 2000 through on or about July 1, 2011, defendant YANG was a senior software engineer for CME, a trading exchange company located in Chicago, Illinois. YANG's responsibilities included writing computer code.

### Globex

CME operated an electronic trading platform, called Globex, through which a majority of the trades made through CME were conducted. Traders using the Globex trading platform transacted trades from locations throughout the United States and overseas. YANG had

access to the computer software and source code that compromised Globex, although he only needed to access part of the software to fulfill his responsibilities.

CME created Globex for its own use and did not make it publically available. The electronic trading platform was utilized by traders and other third parties, but the source code and algorithms that made up the supporting programs were proprietary confidential business property of CME and constituted CME trade secrets.

On June 22, 2010, CME entered into a commercial transaction with an entity located outside the United States under which CME agreed to develop an electronic trading platform jointly with the overseas partner entity based on the source code of the CME Globex system. Under the terms of the agreement, CME licensed the Globex source code to this overseas partner and such partner was contractually obligated to maintain confidentiality of the Globex source code.

### CME Policies

YANG, through CME's code of conduct, a company handbook, and policies on using and protecting CME electronic data, was warned that he had access to confidential and sensitive information including technological information concerning CME's systems. The employee handbook also warned that employees who had access to confidential information, such as trade secrets, were responsible for safeguarding that information. The Information Security Acceptable Use Policy instructed employees that all CME information, including internal documents, policies, corporate strategies, and trade secrets, were considered

4

confidential. This policy prohibited employees from (i) violating CME's copyright, trade secret, patent, or other intellectual property rights; (ii) exporting software, technical information, encryption software, or technology; and (iii) engaging in security breaches by accessing server data, unless doing so was within the scope of the employee's regular job duties.

The Data Classification Policy instructed employees on how to manage CME's "confidential" and "highly sensitive" information. This policy prohibited employees from disseminating confidential or highly sensitive information outside of CME without first obtaining a written confidentiality agreement from the intended recipient of the information. The policy also required that, before disseminating confidential and highly sensitive information outside of CME, employees first had to receive the approval of the author of the information or the CME employee responsible for the information. YANG never received any approval from CME to download, upload or disseminate confidential and highly sensitive information.

Defendant YANG certified annually that he reviewed the code of conduct and employee handbook and that he agreed to abide by CME's policies.

### CME's Security Measures

CME took several security precautions to restrict access to its computer code, including, but not limited to:

-requiring a password each time an employee logged onto the CME computer system; and

-causing a message to appear on each employee's computer screen when they logged on, which warned the employee that: (i) the system was to be used for authorized CME business purposes only; (ii) any unauthorized access or activity was a violation of CME policy and could be a violation of law; and (iii) all activity on the system was subject to monitoring in case of possible security violations.

### Downloaded Files

Between approximately late-2010 and on or about June 30, 2011, defendant YANG, without authorization from CME: (i) downloaded over 10,000 files containing CME computer source code from CME's secure internal computer system to his CME-issued work computer, including source code that made up at least a substantial part of the Globex operating systems, which were trade secrets, in addition to thousands of other CME files; (ii) then transferred many of these computer files from his work computer to his personal USB flash drives, which defendant YANG plugged into his work computer; and (iii) then transferred many of the computer files from his USB flash drives to his personal computers and hard drives, located at his home.

### Defendant YANG's Business Venture in China

Defendant YANG and two business partners developed plans to form a business referred to as the Tongmei (Gateway to America) Futures Exchange Software Technology

6

Company ("Gateway"). The purpose of Gateway was to increase the trading volume at the Zhangjiagang, China chemical electronic trading exchange (the "Zhangjiagang Exchange").

According to business proposals:

      i.     The Zhangjiagang Exchange was to become a transfer station to China for advanced technologies companies around the world, and defendant YANG expected that Gateway would provide the Zhangjiagang Exchange with technology through written source code, to allow for high trading volume, high trading speeds, and multiple trading functions. Defendant YANG was to become Gateway's president.

      ii.     To help the Zhangjiagang Exchange attract more customers and generate higher profits, Gateway proposed to expand the Zhangjiagang Exchange's software by: (i) providing customers with more ways of placing orders, such as good-til-cancel orders, good-til-date orders, and stop-loss orders; (ii) connecting the Zhangjiagang Exchange database's storage systems and matching systems; (iii) rewriting the trading system software in JAVA computer programming language; (iv) raising the system's capacity and speed by modifying communication lines and structures; and (v) developing trading software based on FIX computer coding language.

Defendant YANG engaged in contract negotiations on behalf of Gateway with the Zhangjiagang Free Trade Board located in Zhangjiagang, China for Gateway to improve the trading platform for the Zhangjiagang Exchange.

As stated in count one of the superseding indictment, on or about February 28, 2011, in Chicago, YANG, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, download, upload, replicate, and transmit a trade secret belonging to CME, specifically, proprietary computer file EBFDCADFDF71C14543880F6E88DC535F, such trade secret being related to or included in products produced for and placed in interstate and foreign commerce, intending and knowing that the offense would injure CME.

As stated in count two of the superseding indictment, on or about April 7, 2011, in Chicago, YANG, with intent to convert a trade secret to the economic benefit of someone other than the owner thereof, knowingly and without authorization did, and attempted to, copy, duplicate, download, upload, replicate, and transmit a trade secret belonging to CME, specifically, proprietary computer file FCCBB1225B9C0E4B77773ECE7DA1907A, such trade secret being related to or included in products produced for and placed in interstate and foreign commerce, intending and knowing that the offense would injure CME.

## Maximum Statutory Penalties

7.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count One carries a maximum sentence of 10 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with

8

respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.      Count Two carries a maximum sentence of 10 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.  Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 20 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

b.     **Offense Level Calculations**

**Count One**

i.     Pursuant to § 2B1.1(a)(2), the base offense level is 6.

ii.     Pursuant to § 2B1.1(b)(1)(N), it is the government's position that the offense level is increased by 24 because the potential loss was between $50 million and $100 million. The defendant disagrees with the government's position and reserves the right to argue that the loss was less than $55.7 million.

**Count Two**

i.     Pursuant to § 2B1.1(a)(2), the base offense level is 6.

ii.     Pursuant to § 2B1.1(b)(1)(N), it is the government's position that the offense level is increased by 24 because the potential loss was between $50 million and $100 million. The defendant disagrees with the government's position and reserves the right to argue that the loss was less than $55.7 million.

        iii.     Pursuant to § 3D1.1(a)(1) and 3D1.2(d), the offense levels for Counts One and Two are grouped. Therefore, it is the government's position that the total offense level is 30.

        iv.     If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline §3E1.1(a).

        v.     If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to §3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline §3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

        c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, if defendant qualifies for the offense level reductions pursuant to Guideline § 3E1.1(a) and (b), it is the government's position that the anticipated offense level would be 27, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release and fine the Court may impose.

        e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.     Each party is free to recommend whatever sentence it deems appropriate.

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment as to defendant.

## Forfeiture

14.    The superseding indictment charges that defendant has subjected real and personal property to forfeiture, namely:

    a.    Compaq laptop computer, Serial Number P3005USP200X640WC51E;

    b.    HP mini laptop computer, Serial Number CNF0023GBD;

    c.    Dell Optiplex computer, Serial Number 6YG5G01;

    d.    Dell Optiplex, Part Number SX270, Serial Number 91J4L31;

    e.    Iomega external hard drive, Serial Number 99A8343DB6;

    f.    Seagate external hard drive, Model ST310212A, Serial Number 5EGOAP5D;

    g.    Maxtor external hard drive, Part Number MX6L020J1, Serial Number 6612119139381;

    h.    Compaq computer, Part Number 116400-005 (without hard drive);

    i.    HP Compaq computer Model NC 6000, Serial Number CNU 435F6P2 (without hard drive);

    j.    Transcend USB flash drive, labeled "May Yang";

    k.    Datatraveler 8GB USB flash drive, labeled "3_23 GB free";

    l.    USB flash drive, labeled "copy to from small flash";

    m.    Kingston USB flash drive, labeled "13.3 GB free";

    n.    Kingston USB flash drive, blue and white, labeled "carry on 4.89 GB Free";

    o.    SanDisk 4MB multi media card in hard plastic case;

    p.    256MB USB flash drive, Model JD 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, labeled "Lily Yang";

14

q.      USB flash drive key chain, labeled "EMD";

r.      USB flash drive, in leather case;

s.      USB flash drive, concealed in a pen;

t.      3.5" USB 2.0 external aluminum hard drive enclosure;

u.      2.0 GB Memory stick duo adapter in opened case;

because that property was used to facilitate the commission of the offense. By entry of a guilty plea to Counts One and Two of the superseding indictment, defendant acknowledges that the property identified above is subject to forfeiture.

15.     Defendant agrees to the entry of a forfeiture judgment against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described property and further agrees to the seizure of these properties so that these properties may be disposed of according to law.

16.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 458.

18.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

       vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

       viii.    With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

       b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

       c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## **Presentence Investigation Report/Post-Sentence Supervision**

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

22.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to

defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant

breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____9/19/12_____

_____
GARY S. SHAPIRO
Acting United States Attorney

_____
BARRY JONAS
Assistant U.S. Attorney

_____
PAUL TZUR
Assistant U.S. Attorney

_____
CHUNLAI YANG
Defendant

_____
EDWARD GENSON
Attorney for Defendant

22